Melanie L. Proctor (SBN 228971)
BACKSTOP LEGAL
11135 San Pablo Avenue, #2547
El Cerrito, California 94530
(510) 417-7269
melanie@backstoplegal.com

*Attorney for Plaintiff*
CHLOE DILLON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHLOE DILLON,<br><br>Plaintiff,<br><br>vs.<br><br>TODD BLANCHE, in his official capacity as United States Attorney General; SIRCE OWEN, in her official capacity as Acting Director, Executive Office for Immigration Review; and UNITED STATES DEPARTMENT OF JUSTICE<br><br>Defendants. | **Civil Action No.: 3:26-cv-10143**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

> "If liberty means anything at all, it means the right to tell people what they do not want to hear."
>
> George Orwell, *Animal Farm* (London, England: Secker and Warburg, 1945)

## INTRODUCTION

1. From September 2022 until August 2025, Plaintiff Chloe Dillon served the public as an Immigration Judge in San Francisco, California. She received excellent reviews, resolved thousands of cases, and her decisions were almost never appealed.

2. In Spring 2025, the San Francisco Assistant Chief Immigration Judge directed all immigration judges to grant any and all motions to change venue filed by the Department of Homeland Security Immigration and Customs Enforcement trial attorneys. Plaintiff questioned the directive as

contrary to law.[1] The ACIJ informed her that "the White House" was watching the issue and cautioned her against resisting the directive.

3. On or about August 20, 2025, Plaintiff sent an email to her supervisor expressing concern that ICE agents had unlawfully detained an unaccompanied minor who had just been in her courtroom, placing him in expedited removal proceedings. She further expressed her concern that the enforcement tactics being used at the courthouse were impeding the orderly administration of justice.

4. On August 22, 2025, Plaintiff was terminated without cause, via an emailed letter citing only "Article II of the Constitution." The letter was signed by Sirce Owen, Acting Director of the Executive Office for Immigration Review.

5. Plaintiff was not provided notice and an opportunity to be heard, nor did EOIR claim to remove her for any statutorily allowable reason.

6. The removal violated Plaintiff's constitutional due process rights and her rights under the Civil Service Reform Act. It also violated her First Amendment rights because the removal was taken, in part, on her perceived political views. It also violated core separation of power principles because "Article II" does not give EOIR power to disregard congressionally-mandated removal protections.

7. Moreover, DOJ's own position is that only the Attorney General personally can remove employees under Article II; however, Plaintiff was removed by the then-Acting Director of EOIR.

8. Plaintiff now files this Complaint for declaratory, injunctive, and monetary relief against her former employer, the U.S. Department of Justice and U.S. Attorney General Todd Blanche in his official capacity ("Blanche;" collectively, "Defendants"), to remedy the wrongful actions taken by Defendants.

**JURISDICTION AND VENUE**

9. The Court has jurisdiction under 28 U.S.C. § 1331 because the case arises under the U.S. Constitution and the laws of the United States, specifically 5 U.S.C. § 2302 (the Whistleblower Protection Act), 28 U.S.C. § 2201 (the Declaratory Judgment Act), and 28 U.S.C. § 1361 (the Mandamus Statute).

[1] See *Matter of Rahman*, 20 I&N Dec. 480 (1992); 34 C.F.R. 1003.20 ("The Immigration Judge, for good cause, may change venue only upon motion by one of the parties, after the charging document has been filed with the Immigration Court. The Immigration Judge may grant a change of venue only after the other party has been given notice and an opportunity to respond to the motion to change venue.").

The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the federal government.

10. Plaintiff files in the Northern District of California because the events described herein occurred in the City and County of San Francisco and Plaintiff is a resident of Alameda County. 28 U.S.C. § 1391(b)(2), (e)(1)(C).

## INTRADISTRICT ASSIGNMENT

11. At all times relevant to this complaint, Plaintiff resided in Alameda County and was employed within the City and County of San Francisco. Accordingly, this case should be assigned to the San Francisco or Oakland Divisions of this District. Civ. L.R. 3-2(c)–(d).

## PARTIES

12. Plaintiff is a 2010 graduate from the University of Arizona School of Law. From 2012 to 2022, she worked as an Assistant Federal Public Defender in the Southern District of California. In September 2022, the United States Attorney General appointed Plaintiff to serve as an Immigration Judge in San Francisco. At all times relevant to the events at issue in this matter, Plaintiff resided in Alameda County, California.

13. Defendant Todd Blanche is now the U.S. Attorney General, and works in Washington, D.C.

14. Defendant Sirce Owen is the Acting Director of the Executive Office for Immigration Review, headquartered in Falls Church, Virginia.

15. Defendant U.S. Department of Justice was established July 1, 1870, in the wake of the American Civil War. It is headquartered in Washington, D.C. and has offices throughout each of the 94 judicial districts in the United States. In May 2026, the Department began advertising for employees to work in San Francisco in various capacities but report directly to headquarters.[2]

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. Plaintiff timely filed an appeal of her termination with the Merit Systems Protection Board.[3]

[2] LinkedIn post by Assistant Attorney General Brett Shumate, May 9, 2026 (https://bit.ly/3PmsK90).

[3] Because Plaintiff believes she has an immediate right of appeal to the MSPB, there is no requirement that she

17. Her appeal was initially assigned to the Western Regional Office; however, the Office of Personnel Management intervened, and the matter was transferred to the Washington Regional Office. There, her appeal has languished.

*18.* On November 26, 2025, the assigned Administrative Law Judge issued an Order to Show Cause why Plaintiff's appeal should not be dismissed without prejudice pending a decision in a consolidated matter (*Megan Jackler and Brandon Jaroch v. Department of Justice*), that touches on one of Plaintiff's issues. Both Plaintiff and the agency submitted a response to the OSC, but no decision was issued.

19. On March 20, 2026, the MSPB issued its decision in *Jackler/Jaroch*. The *Jackler* appellants have appealed that decision to the Federal Circuit, *Jackler v. Department of Justice*, Fed. Cir. No. 2026-1575.

20. On May 6, 2026, the ALJ in Plaintiff's appeal issued another Order to Show Cause, asking the parties to address why Plaintiff's appeal should not be dismissed without prejudice pending the Federal Circuit's decision in *Jackler/Jaroch*.

21. Once again, Plaintiff opposed dismissal, explaining that because her case has unique facts, it should not be further delayed.

22. To date, the ALJ has not ruled on the OSC. Accordingly, Plaintiff has effectively exhausted her administrative remedies such that further delay is not warranted.

## FACTUAL BACKGROUND

### *Executive Office for Immigration Review*

23. The Department created the Executive Office for Immigration Review in 1983,

---

bring her whistleblowing claim first to the Office of Special Counsel. 5 U.S.C. § 1221(b). On March 20, 2026, the MSPB ruled that it did not have jurisdiction over termination appeals brought by immigration judges who were removed under Article II by the Attorney General. *Jackler and Jaroch Consolidation v. Department of Justice*, CF-0752-26-0069-I-1 (https://www.mspb.gov/decisions/precedential/Consolidation_Jackler_and_Jaroch_CF-0752-26-0069-I-1__O&O.pdf). That decision has been appealed to the Federal Circuit Court of Appeals. Drew Friedman, "Former immigration judges challenge MSPB decision on their terminations," *Federal News Network*, March 23, 2026, available at https://federalnewsnetwork.com/litigation/2026/03/former-immigration-judges-challenge-mspb-decision-on-their-terminations/. If the Federal Circuit agrees with the MSPB and this Court deems it necessary, Plaintiff will file a complaint with the Office of Special Counsel. However, complaining to the OSC is likely as futile as seeking a remedy through the MSPB. The OSC's acting director is a Trump appointee, and the Administration has proposed that federal employees be required to sign non-disclosure agreements, chilling whistleblower activity.

consolidating various functions from other agencies.[4] The trial-level adjudicative component falls under the Office of the Chief Immigration Judge. Immigration judges are civil servants appointed by the Attorney General. 8 U.S.C. § 1229a; 8 C.F.R. § 1003.10.

24. The cases are entirely adjudicated within the Executive Branch. Under the current structure, the Department of Homeland Security initiates removal proceedings and prosecutes the cases against the responding non-citizens ("respondents"), with hearings held before Immigration Judges appointed by the U.S. Attorney General. There is no right to counsel in immigration court.

25. In 2020, the San Francisco Immigration Court handled the second-largest case load in the country, around 70,000 cases.[5] A respondent in a major metro area with "dense networks of pro bono legal organizations and law school clinics" is more likely to obtain representation.[6] Lawyers aid in identification of relief, gather evidence, prepare testimony, ensure the respondent receives proper notice of hearings, and file appeals.

26. People with representation are five times more likely to win their requests for relief. Thus, immigration courts in major metropolitan areas have a higher grant rate:

Home › Immigration Courts

**U.S. Immigration Courts**

The U.S. has 88 immigration courts processing 9.6 million cases. Grant rates range from **0.8%** (Houston, TX) to **21%** (New York). Where your case is heard can determine your fate. Click column headers to sort. Click any court for detailed data.

| 88 | 80 | 21% | 0.8% |
|---|---|---|---|
| Total Courts | Active Courts | Highest Grant Rate | Lowest Grant Rate |

| # | Court | State | Total Cases ↓ | Completed | Grant Rate | Removals |
|---|---|---|---|---|---|---|
| 1 | Miami | FL | 682,877 | 723,090 | 10.1% | 33,376 |
| 2 | New York | NY | 634,768 | 805,653 | 21% | 28,668 |
| 3 | Los Angeles | CA | 467,204 | 770,907 | 12.3% | 82,672 |
| 4 | Chicago | IL | 363,725 | 397,221 | 8.1% | 10,261 |
| 5 | San Francisco | CA | 359,734 | 465,805 | 20.5% | 20,973 |

*Figure 1: OpenImmigration* (www.openimmigration.us/courts)

[4] *Wikipedia* (https://en.wikipedia.org/wiki/Executive_Office_for_Immigration_Review), "Executive Office for Immigration Review," rev. June 9, 2026, 00:46.

[5] Tovin Lapan, "A record backlog, antiquated technology, and new quotas: Inside San Francisco's chaotic immigration court," *Fortune*, March 13, 2020 (https://fortune.com/2020/03/13/san-francisco-immigration-court-backlog/).

[66] *OpenImmigration*, "The Representation Gap," (https://www.openimmigration.us/analysis/representation-gap).

27. In 2025, the San Francisco Immigration Court had 22 immigration judges. During that year, the Department fired nearly 20 of the judges, including Plaintiff. In early 2026, the Department announced it would close the court in January 2027. However, in March 2026, the Department abruptly closed the location at 100 Montgomery Street, San Francisco, and announced that all cases would be transferred to the Concord location, which currently has only a handful of immigration judges.

***Plaintiff's Employment as an Immigration Judge***

28. Plaintiff became an immigration judge on September 26, 2022, in a temporary appointment. Following positive performance reviews, she converted to permanent employment on August 21, 2024.

29. On or about April 22, 2025, Assistant Chief Immigration Judge Loi McCleskey emailed a directive to the San Francisco Immigration Judges, informing them that motions to change venue made by the Department of Homeland Security Immigration and Customs Enforcement (ICE) should be granted and judges should only deny motions for change in venue in "rare circumstances."

*30.* The ACIJ's directive was contrary to the Board of Immigration Appeals' precedential decision, *Matter of Rahman*, 20 I&N Dec. 480 (1992). *Rahman* vests immigration judges with discretion to decide motions to change venue. It also set factors to consider when deciding whether good cause exists for the change, including administrative convenience, expeditious treatment of the case, location of witnesses, and the respondent's usual place of residence.

*31.* Plaintiff responded to ACIJ McCleskey's email and expressed concern that the directive was contrary to *Rahman*.

*32.* On April 24, 2025, Plaintiff met with ACIJ McCleskey in person, in the ACIJ's office. Plaintiff expressed the same concerns as she had in her email: A change of venue would not be appropriate in every case, particularly because detained non-citizens do not appear in person for their court appearances. Rather, detained non-citizens appear via Webex. However, their counsel and witnesses would likely be local to the original court and would appear in person. Thus, changing venue would impose undue burdens on respondents' counsel and their witnesses. Moreover, in-person appearances facilitated case completion because it avoided technical difficulties, allowed simultaneous interpretation, and gave judges a better view of the parties and witnesses.

33. ACIJ McCleskey dismissed Plaintiff's concerns. She stated that both counsel and witnesses should be able to appear remotely. She reiterated that even if Plaintiff felt that case completion might be facilitated by retaining the case, the Office of the Chief Immigration Judge expected that these cases would be transferred as requested by ICE.

34. Plaintiff further expressed concern that it might interfere even with the non-citizen's right to counsel, as Plaintiff did not know if attorneys would be able to retain the case once transferred to another court, potentially even out of state. She noted that non-profit organizations often have specific restrictions on the kinds of cases that they can represent based on their funding and that funding can be local, such that, in addition to the circumstances mentioned in the email, it may be appropriate in some limited cases to retain a case to ensure the right to counsel is not infringed.

35. ACIJ McCleskey expressed empathy with Plaintiff's point of view but warned her that "the White House" was paying attention to this and to be careful about pushing the issue further.

36. Plaintiff did not uniformly grant DHS-ICE's motions to change venue. On June 5, 2025, Plaintiff received an email from ACIJ McCleskey notifying her that, in a case in which she had denied ICE's motion to change venue based on the opposition to the motion filed by the respondent's counsel, that the case would, nevertheless, be transferred to a different judge handling detained cases.

37. Plaintiff responded to that email on June 6, 2025, asking whether any notice would be provided to the respondent's pro bono counsel of the transfer, and again expressing her concern that such changes of venue could infringe on the respondent's right to counsel and his ability to receive pro bono counsel.

38. In the months of July and August 2025, ICE filed thousands of motions to re-calendar administratively closed proceedings. The motions were boilerplate and did not provide any individualized facts or argument as to why the case should be re-calendared.

39. In a significant number of cases, the Immigration Court did not have initial jurisdiction to decide the pending applications, and hence the cases had been administratively closed. Nonetheless, ICE sought to re-calendar the cases in the same Immigration Court that lacked jurisdiction in the first place.

40. Specifically, there were a significant number of cases that had been administratively closed because U.S. Citizenship and Immigration Services (USCIS) had jurisdiction to decide the asylum

application of an Unaccompanied Child in the first instance, under either the Trafficking Victims Protection Reauthorization Act (TVPRA) and/or the settlement agreement in *J.O.P. v. DHS*, 8:19-cv-01944 (D. Md.).[7] If USCIS denied the application, the immigration courts would conduct a de novo review of the application.

41. Plaintiff had concerns about ICE explicitly stating in the boilerplate motion that the Immigration Court was required to re-calendar the case to allow ICE to pursue removal when these individuals retained rights under the TVPRA and the *J.O.P*. settlement to have their cases adjudicated first by USCIS.

42. In July and August 2025, Plaintiff issued two orders denying ICE's motion to re-calendar in these cases, and she noted that the individuals were designated unaccompanied minors whose cases had been administratively closed because jurisdiction over the asylum applications were at USCIS. In those same orders, Plaintiff cautioned ICE by stating that she had concerns as to whether such re-calendaring and pursuing removal without the adjudication of the application by USCIS in the first instance could potentially violate the TVPRA or the J.O.P. settlement.[8]

43. On August 20, 2025, ICE arrested an individual at the Immigration Court at 100 Montgomery Street shortly after he had appeared on Plaintiff's master calendar.

44. The individual had come alone to court and had shown up early for court in a full suit and began filling paperwork out to stay up to date with his case. He was *pro se*.

45. When his case was called, the attorney representing ICE made an oral motion to dismiss, without stating any further argument or reason for the dismissal. Plaintiff inquired as to whether DHS intended to initiate expedited removal proceedings instead, and the ICE attorney stated that it would do so.

46. Plaintiff did not expect the motion to be made that day, and it was only one of two cases

[7] Pursuant to the *J.O.P. v. DHS* settlement agreement, class members who were unaccompanied minors have the right to have USCIS decide their asylum applications on the merits. *J.O.P. v. DHS*, National Immigration Project, https://nipnlg.org/work/litigation/jop-v-dhs, rev. May 27, 2026.

[8] A federal judge in Maryland recently found the government in civil contempt of the J.O.P. settlement because it "repeatedly removed young asylum seekers it was legally barred from deporting." "Federal Court Finds DHS in Contempt Over Removals of Young Asylum Seekers Protected by Settlement," *National Immigration Project* (https://nipnlg.org/news/press-releases/federal-court-finds-dhs-contempt-over-removals-young-asylum-seekers-protected), August 6, 2026.

where ICE had made an oral motion in her courtroom, the other being months prior. Plaintiff asked the ICE attorney if there were any federal court orders in effect at that moment that could affect the decision or what was to occur at court that day, as she knew there was ongoing litigation and that policies, temporary restraining orders, and injunctions could be changing day to day.

47. The ICE attorney responded that it was "none of [Plaintiff's] concern." Plaintiff was taken aback by that and stated clearly on the record that she intended to follow any federal court orders that affected her decision-making.

48. Plaintiff informed the respondent that he could either respond to the oral motion that day, or he could request time to respond and to consult with or obtain counsel to assist with the response. He elected to request time to respond and consult with counsel. As a result, Plaintiff did not rule on the motion that day and instead set it over for a brief period for the respondent to obtain counsel.

49. The respondent asked if he could be detained at any time, including when he left the courtroom, and Plaintiff told him that he could be detained prior to the next court date, including when he left the courtroom. She provided him with a copy of the asylum application that he had already filed. He specifically expressed concern over whether he still had a right to seek asylum, and Plaintiff informed him that he did—whether it was before a different judge or whether it was in expedited removal proceedings.

50. Plaintiff learned from court personnel that he was in fact detained by ICE after he left the courtroom. There were loud protests outside the court at 100 Montgomery that day, which made it nearly impossible to work in her chambers because it had large windows that faced the street on which the protest was taking place.

51. Plaintiff thought it was possible that this case could become a larger issue, and after finishing a busy calendar, she took another look at the electronic case file over lunch. At that time, Plaintiff noticed that the respondent was almost certainly a designated unaccompanied minor who could not be placed into expedited removal proceedings, and who thus had the right to have his already-filed asylum application decided first by an asylum officer, and then, if necessary, by the Immigration Court.

52. That same afternoon, Plaintiff sent an email to ACIJ McCleskey explaining these concerns and explicitly stating that she was concerned about potential violations of statutory law and due process. She further stated that the courthouse arrests, such as this one, were disrupting the orderly administration

of justice.

53. Defendants fired Plaintiff approximately 48 hours after she sent that email, via an emailed letter signed by Acting Director of EOIR, Sirce Owen:

> Dear Judge Dillon,
>
> This notice serves to inform you that pursuant to Article II of the Constitution, the Attorney General has decided to remove you from your position as an excepted service Immigration Judge with the United States Department of Justice, Executive Office for Immigration Review. Your removal is effective today. You are required to return all government property by the end of the day.
>
> Sincerely,
>
> SIRCE OWEN
> Digitally signed by SIRCE OWEN
> Date: 2025.08.22 12:18:38 -04'00'
>
> Sirce Owen, Acting Director EOIR

**FIRST CAUSE OF ACTION**

*5 U.S.C. § 2302 (Whistleblower Protection Act)*
*(Against All Defendants)*

54. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

55. Plaintiff reported suspected violations of law, rule, or regulation to her supervisor, a person in a position of authority. Two days later, she received an emailed letter from the Acting Director of the Executive Office for Immigration Review, informing her that the Attorney General was terminating her employment "pursuant to Article II of the Constitution."

56. Plaintiff was terminated in retaliation for her whistleblowing activity.

57. Defendants have never provided a legitimate justification for Plaintiff's removal.

58. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress.

**SECOND CAUSE OF ACTION**

*Violation of the Appointments Clause and Article II of the U.S. Constitution*
*(Against All Defendants)*

59. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

60. Under the Appointments Clause of U.S. Constitution, Congress may vest in the Head of an

Executive Department the power to appoint inferior officers. *See* U.S. Const art II, sec. 2, cl. 2. Inferior officers are subordinate officials who occupy continuing positions and exercise significant authority pursuant to the laws of the United States. *See, e.g.*, *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018).

61. The Head of the Department for the U.S. Department of Justice is the Attorney General. *See* 28 U.S.C. § 503. The Attorney General's authority to appoint inferior officers within the U.S. Department of Justice is paired with non-delegable authority over the removal of inferior officers at DOJ. *See* Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee, 43 Op. O.L.C. 263, 282 (2019) ("[T]he authority to remove inferior officers may not be delegated to an agency official other than the department head, or another official constitutionally competent to appoint that officer in the first place."); Constitutionality of the Foreign Service Grievance Board's Oversight Authority, 50 Op. O.L.C. – (Aug. 20, 2026), available at https://www.justice.gov/olc/media/1458836/dl.

62. Plaintiff was removed by Acting Director of EOIR Sirce Owen, not the Attorney General.

63. Before the MSPB, DOJ has justified Plaintiff's termination on the grounds that she was allegedly an inferior officer and thus (DOJ claims) must be removable at will.

64. DOJ is wrong that inferior officers must be removable at will. *See*, *e.g.*, *Myers v. United States*, 272 U.S. 52, 161 (1926) (explaining that Congress's power to regulate a Department Head's removal of inferior officers is "incidental" to Congress's power to decide whether to authorize the Department Head to appoint the inferior officer in the first place); *Morrison v. Olson*, 487 U.S. 654 (1988) (upholding removal protections of an inferior officer).

65. DOJ's argument is self-defeating. Because Plaintiff was purportedly terminated by the Acting Director Owen, her removal was invalid and void ab initio.

**THIRD CAUSE OF ACTION**

*Violation of the First Amendment of the U.S. Constitution – Retaliation*

*(Against All Defendants)*

66. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

67. The First Amendment protects public employees from retaliation for exercising their right

to free speech. *Lane v. Franks*, 573 U.S. 228, 231 (2014). Moreover, "[t]here is considerable value . . . in encouraging, rather than inhibiting, speech by public employees. For '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" *Id.* at 236, quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994).

68. Plaintiff expressed opposition to unlawful activity within her immigration courtroom.

69. In retaliation for Plaintiff's expressed concerns regarding unlawful activity by immigration agents, Defendants, through Acting Director Owen, terminated her employment. The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).

70. Such actions would chill a person of ordinary firmness from continuing to engage in the protected activity.

71. Plaintiff's free expression was a substantial or motivating factor in Defendants' conduct.

72. The Court should find that Defendants' actions violated Plaintiff's First Amendment right to freedom of speech.

73. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress.

## FOURTH CAUSE OF ACTION

*Violation of the First Amendment—Viewpoint-Based Discrimination*
*(Against All Defendants)*

74. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

75. There is a national interest in maintaining a nonpolitical civil service. *United Public Workers of America v. Mitchell*, 330 U.S. 75 (1947).

76. When Plaintiff exercised her right to free speech to express concerns regarding unlawful activity by immigration agents in the immigration court, Defendants surmised that she was not politically aligned with the Administration, particularly because she had previously worked as a federal public defender.

77. The First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. *Roberts v. United States*

*Jaycees*, 468 U.S. 609, 622 (1984).

78. When Defendants, through Acting Director Owen, terminated Plaintiff's employment, they effectively discriminated against her for her perceived political views. Discrimination based on political viewpoint is unconstitutional.

79. Plaintiff has an equitable cause of action to enjoin "unconstitutional actions" by federal officials. *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 327–328 (2015).

80. The Court should enjoin Defendants from further discrimination against Plaintiff.

81. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress.

**FIFTH CAUSE OF ACTION**
*Violation of the Fifth Amendment (Procedural Due Process)*
*(Against All Defendants)*

82. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

83. The Due Process Clause of the Fifth Amendment of the U.S. Constitution guarantees that "no person shall . . . be deprived of life, liberty, or property, without due process of law." Plaintiff has protected property and liberty interests under the Due Process Clause in her continued employment with the Department and consideration for employment in federal service under the Fifth Amendment of the United States Constitution.

84. Defendants' reliance on Article II to terminate Plaintiff's employment and circumvent legislatively-mandated due process, which Congress was empowered to enact under Articles I and II, is improper and has unlawfully deprived her of these protected interests.

85. Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm. As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**SIXTH CAUSE OF ACTION**
*Violation of the Fifth Amendment (Property Interest)*
*(Against All Defendants)*

86. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

87. Plaintiff has a protected property interest in her continued employment with the

Department under the Fifth Amendment of the United States Constitution.

88. Defendants' unlawful termination of Plaintiff's employment without due process deprived her of that property interest.

89. Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm. As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**SEVENTH CAUSE OF ACTION**
*Violation of the Administrative Procedure Act*
*5 U.S.C. §§ 706(1) and 706(2)*
*(Against All Defendants)*

90. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

91. Defendants unlawfully withheld the due process owed to Plaintiff, and implemented a final agency decision that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," "contrary to constitutional right, power, privilege, or immunity," "without observance of procedure required by law," "unsupported by substantial evidence," and/or "unwarranted by the facts." 5 U.S.C. § 706.

92. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

93. Plaintiff's termination is a final agency action that is contrary to Article II of the U.S. Constitution and the First and Fifth Amendments to the U.S. Constitution, and therefore violates the APA.

94. Plaintiff has suffered adverse and harmful effects, including but not limited to lost or jeopardized present or future financial opportunities and reputational harm. As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**EIGHTH CAUSE OF ACTION**
*Violation of the Administrative Procedure Act*
*(Ultra Vires in Violation of Statutory Authority)*
*(Against All Defendants)*

95. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

96. Defendants lacked lawful authority to terminate Plaintiff's federal service without adhering to the statutory protections afforded to her. Her termination was therefore *ultra vires* and without legal

force or effect.

97. Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm. As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**NINTH CAUSE OF ACTION**
*Declaratory Judgment Act*
*28 U.S.C. §§ 2201 and 2202*
*(Against All Defendants)*

98. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

99. The actions of Defendants violated Plaintiff's rights as a civil servant and as a federal employee who had the right to raise concerns about suspected violations of law, rules or regulations.

100. Plaintiff is entitled to declaratory relief based on all identified claims. There is a substantial and ongoing controversy between Plaintiff and Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Defendants do not have the authority to remove Plaintiff without affording her all rights and protections set forth by applicable statutes and regulations.

101. Plaintiff has suffered adverse harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm. As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**TENTH CAUSE OF ACTION**
*Mandamus Relief*
*(Against All Defendants)*

102. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

103. In the alternative, Plaintiff is entitled to mandamus relief commanding Defendants to return her to her office and not remove her from federal service without following lawful procedures. Defendants have a legal duty to not terminate Plaintiff without affording her the protections prescribed by law.

104. The provisions of 28 U.S.C. § 1361 provide for an independent cause of action in cases seeking mandamus relief against federal officers, employees, and agencies in the absence of any other available remedies. To the extent relief is unavailable under either the Civil Service Reform Act, the

Administrative Procedure Act, common law equity, or any other law to enjoin unlawful government action, mandamus relief is appropriate here.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Dillon respectfully requests that the Court order the following relief:

1. Enter judgment in favor of Plaintiff against Defendants;
2. Award Plaintiff compensatory and other damages;
3. Reinstate Plaintiff to the position held prior to her unlawful termination or other equivalent position;
4. Award Plaintiff lost pay and benefits;
5. Award Plaintiff and counsel court costs, expenses, attorneys' fees, and interest;
6. Declare that Defendants' conduct is in violation of the Whistleblower Protection Act and the First Amendment of the Constitution;
7. In the alternative, issue a writ of mandamus ordering the same relief sought above; and
8. Grant such other relief as the Court deems just and proper.

DATED: September 10, 2026

Respectfully submitted,

BACKSTOP LEGAL

/s/Melanie L. Proctor
Melanie L. Proctor
*Attorney for Plaintiff Chloe Dillon*